IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PALMARIS IMAGING, L.L.C.,, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL NO. 04-CV-077-WDS |
| vs. ) | |
| ) | |
| BELLEVILLE IMAGING, INC., and ) | |
| EFFINGHAM OPEN MRI, L.L.C.,, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

This matter is before the Court on cross motions for summary judgment. Defendants filed their joint motion for summary judgment (Doc. 37) to which plaintiff filed a response (Doc. 44), and a cross motion for summary judgment on defendant's counterclaims (Doc. 39).

## BACKGROUND

This case arises out of an alleged breach of contract for services between plaintiff and defendant involving x-ray imaging. Plaintiff Palmaris Imaging, L.L.C. ("Palmaris"), a Missouri corporation, has a network of licensed radiology department physicians who provide teleradiology services. "Teleradiology" is the transfer of films or images, produced by x-ray or similar studies, typically through telephone lines to a radiologist who then reads and interprets the films or images and then provides a report to the imaging company. The complaint alleges that in March of 2002, Palmaris entered into a one-year, renewable contract[1] with Belleville Imaging, Inc. ("Belleville Imaging"), a private x-ray and imaging laboratory located in Illinois, in which Palmaris was to provide teleradiology and other medical services to Belleville Imaging.

---

[1] The contract provides for termination upon 90 days written notice.

(Doc. 1, Pl.'s Ex. 1, ¶ 2; Doc. 1, Pl.'s Ex. 3, ¶ 2.)

At approximately the same time, Palmaris entered into a nearly identical contract with Effingham Open MRI. (Effingham MRI).  This defendant's company is based in Illinois, and is also a private imaging lab offering services that are comparable to those offered by Belleville Imaging.  Belleville Imaging and Effingham MRI are linked by virtue of the fact that David Horace is an officer, director, and shareholder of each, and he represented each defendant in the negotiations with Palmaris, and signed the service agreement contracts on behalf of each company.  Palmaris provided services to the defendants until approximately October 14, 2002, when both Belleville Imaging and Effingham MRI notified Palmaris that they had contracted with physicians independent of Palmaris for their radiology services needs, and would no longer be using Palmaris.

Palmaris filed the initial complaint against Belleville Imaging and Effingham MRI, alleging that the two defendants breached their Service Agreement contracts.  Counts I, II, and III of the complaint seek recovery against Belleville for breach of contract, an action on account, and quantum meruit.  Counts IV, V, and VI seek recovery against Effingham MRI on the same claims.  Belleville Imaging's answer asserts a counterclaim against Palmaris for breach of contract, seeking recovery (Doc. 6).  Effingham MRI has filed a similar counterclaim in its answer (Doc. 7).

The parties have stipulated that their disputes shall be governed by Missouri law.

A.    Common Contract Provisions

As part of the March 2002 contracts (entitled "Teleradiology Service Agreements "), Palmaris agreed to have its "duly licensed" physicians read and interpret images sent from Belleville Imaging and Effingham MRI and then provide reports.  (Doc. 1, Pl.'s Ex. 1, ¶ 3; Doc.

1, Pl.'s Ex. 3, ¶ 3.) There are several provisions of the contracts, identical in all relevant respects, that are important to these cross motions for summary judgment.

Paragraph 2(a) of each contract provides:

> If either party breaches any material term or condition of this Agreement, the other party may give the breaching party thirty (30) days written notice of termination of this agreement, setting forth the breach in such notice. If such breach is not cured within such thirty (30) day notice period, the termination shall become effective at the conclusion of the thirty (30) day notice period. If such breach is cured within the thirty (30) day notice period, this Agreement shall remain in effect.

(Doc. 1, Pl.'s Ex. 1, ¶ 2(a); Doc. 1, Pl.'s Ex. 3, ¶ 2(a).)

Paragraph 3(a) provides: "Palmaris will provide a preliminary or final faxed report within two (2) hours of receipt of the image. Palmaris will provide a transcribed final report within 24 hours. The 24 hours applies Monday-Friday not weekends. For example, an image is received Friday, the report will be delivered Monday." (Doc. 1, Pl.'s Ex. 1, ¶ 3(a); Doc. 1, Pl.'s Ex. 3, ¶ 3(a).) Paragraph 3(b) provides: "Palmaris represents and warrants that each physician shall: hold a medical license for the state in which client is located; hold, or be eligible to hold, a board certification in radiology from the American Board of Radiology; and have good-standing participation in Medicare and Medicaid programs." (Doc. 1, Pl.'s Ex. 1, ¶ 3(b); Doc. 1, Pl.'s Ex. 3, ¶ 3(b).)

Paragraph 6(h) provides: "Client agrees that all teleradiological services provided to Client shall be provided exclusively by Palmaris." (Doc. 1, Pl.'s Ex. 1, ¶ 6(h); Doc. 1, Pl.'s Ex. 3, ¶ 6(h).) Paragraph 9 provides:

> During the term of this Agreement and for a period of 12 months following the effective date of termination of this Agreement for any cause, Client [meaning Belleville and Effingham, respectively] agrees: (a) not to solicit the employment of or employ or otherwise contract

>with, directly or indirectly, any physician who provided services to Client under this Agreement or any predecessor agreement between Client and Palmaris for the purpose of obtaining radiology physician services; and (b) not to encourage or in any way induce or influence any physician who provided services to Client under this Agreement to terminate his or her relationship with Palmaris.
>
>Upon termination of this agreement Palmaris will provide Client with a complete list of physicians effected [sic] by this clause. In the event Client does solicit or enter into an employment, independent contractor or other agreement with such physician (or with any group or entity which utilizes the services of such physician for radiology physician services) or attempts to encourage or in any way induce or influence such physician to terminate his or her relationship with Palmaris, Palmaris shall be entitled, at its sole option, to either injunctive relief or liquidated damages in the amount of $100,000 per physician.

(Doc. 1, Pl.'s Ex. 1, ¶ 9; Doc. 1, Pl.'s Ex. 3, ¶ 9.)

Finally, paragraph 15 provides: "This Agreement constitutes the entire Agreement between the parties and may be amended only by a writing signed by both Palmaris and Client." (Doc. 1, Pl.'s Ex. 1, ¶ 15; Doc. 1, Pl.'s Ex. 3, ¶ 15.)

 B. <u>Allegations of Breach of Contract Provisions</u>

  1. <u>Defendants' claims.</u>

Both defendants claim that Palmaris breached paragraphs 3(a) and 3(b) of their respective agreements, asserting that Palmaris delivered reports late, which subjected Belleville Imaging and Effingham MRI to frustration and some lost business. Belleville Imaging asserts it attempted to ameliorate Palmaris' delays in part by installing its own, more efficient dictation system and by taking on a portion of the transcription work that Palmaris had agreed to provide.

Belleville Imaging and Effingham MRI also assert that the two radiologists used by Palmaris to read and interpret images and provide reports–Gregory Cyzek, M.D. and Daniel Abodeely, M.D.–were licensed in Illinois but were not properly registered with the Illinois fiscal

intermediary for Medicare, and, as a result, claims submitted by Belleville Imaging and Effingham MRI for Medicare reimbursement were rejected, and they became liable for penalties for filing claims late.

      2.    <u>Plaintiff's claims</u>.

In response, Palmaris claims that Belleville Imaging and Effingham MRI breached paragraphs 6(h) and 9 of the Service Agreement, by virtue of the fact that the defendants no longer obtained exclusive teleradiological services from Palmaris.

In addition, Palmaris asserts that the physicians with whom the defendants contracted outside the Palmaris agreements included two partners of Dr. Cyzek and Dr. Abodeely[2] (the doctors who were under contract with Palmaris originally to provide services to Belleville and Effingham). Palmaris alleges that Belleville Imaging is indebted to it for services rendered as of September 30, 2002, plus late fees and statutory interest. It alleges that Effingham MRI is indebted to it for services rendered as of December 31, 2002, plus late fees and statutory interest.

## ANALYSIS

Summary judgment is appropriate when "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of demonstrating that no evidence exists to support the non-moving party's contentions. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, then the non-moving party must set forth specific facts showing that there is a genuine issue of material fact requiring a jury

---

[2] The partners of Dr. Cyzek and Dr. Abodeely are Dr. David Hunter and Dr. Edward O'Brien

trial. Id. at 324. In reviewing a motion for summary judgment, the Court must view the record and draw all inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). However, "this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id*. at 247-48 (emphasis in original); *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (noting that court is required to draw "only those inferences that are reasonable").

      1.      Missouri Law on Breach of Contract

Missouri follows the "first to breach rule," which holds that a party to a contract may not claim its benefit when that party was the first to violate it. *R.J.S. Sec. v. Command Sec. Servs.*, 101 S.W.3d 1, 36 (Mo. Ct. App. 2003). Palmaris' failure to provide preliminary or final reports within two hours of its receipt of images and final reports within 24 hours arguably constitutes a breach of its promise in paragraph 3(a) of the agreement, and therefore, it appears that Palmaris was the first to breach.

The fact that Palmaris may have been the first to breach does not end the analysis, because only if the breach is material, will the breach excuse the other party's performance. *Id*. at 36-37. If the breach is not material, then the aggrieved party may sue for partial breach but may not cancel the agreement. *Id*. at 37. Courts analyze five factors in determining whether a breach is material. *Id*. at 38-39.

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
> (c) the extent to which the party failing to perform or to offer to perform

>will suffer forfeiture;
>(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
>(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Id*. (*quoting* Restatement (2d) Contracts § 241 (1979)).

  2.  <u>Determination of Allegations of Breach of Contract</u>

  Palmaris' breach of paragraph 3(a) meets the requirements for materiality. The delays amounted to a material breach in that they were sustained and significant[3] in that Palmaris used the quick turn-around times as a selling point for its services. The fact that Belleville Imaging and Effingham MRI were attracted to Palmaris' quick turn-around times as a means to position their own businesses more competitively. The record reveals that David Horace's complaints about these delays to Palmaris personnel were not addressed. Letters from Palmaris' attorney, Harry Wellsford, dated November 22, 2002, and January 10, 2003, make no mention of any effort to remedy the clients' complaints. Moreover, in May 2002, Belleville Imaging went so far as to install, at its own expense, a dictation system and separate telephone line in its office in an effort to alleviate the slowness of Palmaris' service by eliminating a step in the transcription process. In its defense, Palmaris' contends that the promised turn-around times applied only to certain types of images. But this contention must fail because paragraph 3 of the contract makes no distinction in terms of its application regarding either the types of images or how the images are ordered.

---

[3]It appears from the record that Effingham received only a handful of reports within two hours, and Belleville did not receive any.

Palmaris also may have breached paragraph 3(b) regarding its representations and warranties with respect to its physicians. Drs. Cyzek and Abodeely, two of the physicians who Palmaris used to interpret and report on images for its clients, met the first two requirements of 3(b), but there is some question as to whether the doctors had "good-standing participation in Medicare and Medicaid programs." (See Doc. 1, Pl.'s Ex. 1, ¶ 3(b); Doc. 1, Pl.'s Ex. 3, ¶ 3(b).)

Clearly, the parties construe the meaning of this quoted language differently. Amy Kegler, Palmaris' former vice president, stated in her deposition that the provision required only that Palmaris' physicians not be under any sanctions due to past program violations and that they be qualified for program enrollment. On the other hand, Belleville Imaging and Effingham MRI contend that they were unable to be reimbursed by Medicare for work performed by Drs. Cyzek and Abodeely because the doctors were not properly licensed with the Illinois Medicare Fiscal Intermediary. This, they say, demonstrates Palmaris' violation of the good-standing requirement.

This issue is a question of fact, and therefore, one for a jury. The parties are encouraged to present evidence as to whether the doctors were enrolled as Medicare eligible providers during the term of the agreement; whether they were licensed with other states' Medicare fiscal intermediaries; and any other evidence that would establish the good-standing requirement.

Given, at least, Palmaris' breach of the report-turnaround provision in paragraph 3(a), paragraph 2(a) provided a written notice provision once Belleville Imaging and Effingham MRI elected to terminate their respective agreements. (See Doc. 1, Pl.'s Ex. 1, ¶ 3(a); Doc. 1, Pl.'s Ex. 3, ¶ 3(a).) Palmaris would have had 30 days to either cure the

breach, or the clients' termination would become effective. It does not appear from the record that Belleville Imaging and Effingham MRI exercised their rights under paragraph 2(a). Rather, the record reveals that the defendants arranged for the services of Drs. Hunter and O'Brien to substitute for those previously provided by Drs. Cyzek and Abodeely through Palmaris. In doing so, they violated paragraph 6(h), in which they agreed to use only Palmaris for teleradiological services. Palmaris' business model is based on the exclusiveness of its network of licensed radiology department physicians who provide teleradiology services and this would, therefore, constitute a material breach.

In addition, Belleville Imaging and Effingham MRI may have violated paragraph 9 because Drs. Hunter, O'Brien, Cyzek, and Abodeely all belong to the same partnership. If the defendants entered into an agreement with that partnership as a group or entity, or if they otherwise tried to use Cyzek, Abodeely, or the partnership's radiology physician services directly rather than using Palmaris, then they violated paragraph 9.

Therefore, the Court finds, at a minimum, that Palmaris breached paragraph 3(a) of the agreement, and that Belleville Imaging and Effingham MRI, in turn, each violated paragraph 6(h). The Court further finds that these breaches are material, and the respective parties are entitled to summary judgment on these claims. Accordingly, judgment is **GRANTED** in favor of defendants Belleville Imaging, Inc. and Effingham Open MRI, L.L.C. and against plaintiff Palmaris Imaging, L.L.C. on defendants' joint motion for summary judgment as to the issue that plaintiff breached paragraph 3(a) of the contract. Judgment is **GRANTED** in favor of plaintiff Palmaris Imaging, L.L.C. and against defendants Belleville Imaging, Inc. and Effingham Open MRI, L.L.C. with respect to the issue that defendants each breached paragraph 6(h) of their respective

contracts.

In addition, there are additional provisions of the contract which may have been breached by the parties, but the record is insufficient on these claims to warrant summary judgment.  The parties are, therefore,  entitled to a trial to determine these remaining issues and the extent of damages, if any for the respective breaches.

**IT IS SO ORDERED.**

**DATED:   May 12, 2005**

**s/ WILLIAM D.  STIEHL**
**DISTRICT JUDGE**
